BARNEY, (WESTFALL v.) See Case No. 17.447.

BARNEY, (WILLIAMS v.) See Case No. 17,713.

BARNEY, (WOODRUFF v.) See Case No. 17,986.

BARNEY EATON, The. See Case No. 1,028.

BARNHARDT, (UNITED STATES v.) See Case No. 14,526.

BARNITS v. FIRST NAT. BANK OF EATON. See Case No. 1,034.

---

## Case No. 1,034.

### BARNITS v. FIRST NAT. BANK OF HAMILTON.

### SAME v. FIRST NAT. BANK OF EATON.

[1 Cin. Law Bul. 45.]

Circuit Court, S. D. Ohio. March, 1876.

USURY—PENALTY—NATIONAL BANKS—ACT JUNE 3, 1864.

[The words "legal representatives," as used in Act June 3, 1864, (13 Stat. 108, § 30,) providing for the recovery of twice the amount of usurious interest from a national bank by the "legal representatives" of the person paying such interest must be construed strictly, and not to include the assignee in bankruptcy of such person.]

[Followed in Barnett v. Muncie Nat. Bank, Case No. 1,026.]

[Contra, see Wright v. First Nat. Bank of Greensburg, Case No. 18,078, and note to Barnett v. Muncie Nat. Bank. Id. 1,026; same case, on appeal, 98 U. S. 555.]

[At law. Two actions by David Barnett and Isaac E. Craig, assignees of Barnits & Whitesides, one against the First National Bank of Hamilton, and the other against the First National Bank of Eaton, under Act June 3, 1864, (13 Stat. 108, § 30,) to recover double the amount of usurious interest alleged to have been paid on loans. Judgment for defendants, dismissing the causes.]

Miller & Gilmore and Wilson & Craig, for plaintiffs.

Mr. Brown, for First Nat. Bank of Hamilton.

Hogans & Broadwell, for First Nat. Bank of Eaton.

Before EMMONS, Circuit Judge, and SWING, District Judge.

These two cases were heard together upon questions arising upon the pleadings. The question determined arose upon the construc-

tion of the 30th section of the national banking act, [Act June 3, 1864; 13 Stat. 108.] Barnits & Whitesides had large lines of discount, principally with the National Bank of Eaton, upon which it was alleged Barnits & Whitesides paid, and the banks received, more than the legal rate of interest. The section of the national banking act referred to, provides that "the person by whom greater than the legal rate of interest has been paid, or his legal representatives may recover back in an action in the nature of an action of debt, twice the amount of interest thus paid from the association receiving or taking the same." After these transactions, Barnits & Whitesides made an assignment for the benefit of their creditors under the state law; and their assignees (the plaintiffs) brought these suits to recover double the amount of the alleged usurious interest so paid and received, amounting to several thousand ·dollars. The plaintiffs claimed that they were the legal representatives of Barnits & Whitesides, and therefore entitled to recover. But the court held that the term "legal ·representatives" must be defined according to the legal signification of the words; that under the national bankrupt act, which vests in the assignee all the estate of the bankrupt, it might well be that such assignee could maintain this action, but that no such consequence followed under the state laws; that inasmuch as this was a penal statute, and therefore to be construed strictly, the popular or other signification of these words could not be adopted, contrary to their strict legal acceptation; and that the definition claimed by the plaintiffs could nowhere be found in the law dictionaries, or in any decided cases, but that such authorities as were cited to the court very clearly omitted such description of a legal representative as that claimed. The counsel for the banks cited the case of Rice v. White, 8 Ohio, 216, where it was held that the words "legal representatives," in the act defining the duties of county auditors, meant the heir of a deceased person, and vested in him, and not the administrator, the title of a tax certificate. And EMMONS, Circuit Judge, who delivered the opinion of the court, sustained the views of the defendants' counsel by rendering a judgment to dismiss the causes.